FILED

2006 Jan-05  AM 09:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

EDWIN WILLIAMS,

     Plaintiff,

vs.                                                  CASE NO. CV-04-J-2495-NW

LIMESTONE COUNTY, ALABAMA,
et al.,

     Defendants.

## <u>MEMORANDUM OPINION</u>

Pending before the court are the defendants' motions for summary judgment, memoranda and evidentiary submissions (docs. 43-45), to which the plaintiff has responded (docs. 47-57) and the defendants have filed memoranda in reply (docs. 58 and 59).  Having considered the pleadings, evidence and arguments of the parties, the court finds as follows:

### Factual Background

The relevant facts of this case begin when the plaintiff was jailed from March 11, 2004, to March 17, 2004, on the charge of "residential building without a permit" and for violation of probation stemming from a previous charge of building a house without a contractor's license.  Plaintiff's statement of undisputed facts, ¶ 1; exhibit A to Complaint.  On March 15, 2004, while jailed, the plaintiff complained of severe

1

chest pain, for which he was given Tylenol by the jail nurse.  Barbara Longmire depo. at 54-55; plaintiff depo. at 53.  His blood pressure was taken by deputies and his requests for medical attention were ignored.   The plaintiff told the jailers that he had insurance and would pay for his own medical treatment if they would take him to a hospital, but this request was also ignored.  Plaintiff's statement of undisputed fact, ¶ 16.  On March 19, 2004, two days after he was released from jail, the plaintiff went to Decatur General Hospital, where he learned he had suffered a heart attack.  He was moved to Huntsville Hospital for emergency heart surgery; and he was informed that medical treatment at the time his chest pain began may have prevented his heart attack.  Exhibit A to Complaint; *see also* plaintiff depo. at 91-92, 100.  Specifically, he was told that the damage to the lower third of his heart might not have occurred had he received treatment.  *Id*., at 100-101.  He has not worked since then and was awarded Social Security disability benefits with an onset date of March 19, 2004.  *Id.,* at 14; 110-111; plaintiff affidavit, ¶ 9.

In the early morning of March 15, 2004, Plaintiff awoke feeling like he had been hit in the chest with a brick, gasping for air, with sweating and chills.  Plaintiff depo. at 38.   The jailers called defendant Barbara Longmire, the nurse on call pursuant to a contract with defendant Naphcare.  The first call to Longmire, about 3:00 a.m., was made by  Sergeant Temple, who said an inmate had chest pain or chest

2

discomfort.  Longmire depo. at 47-48.  Longmire noted that the blood pressure reading she was given was within the normal range.  *Id.,* at 50-51.  Longmire did not ask for plaintiff's age, did not know his intake sheet mentioned chest pains, and had no other information.  *Id*., at 51-52; *see also* plaintiff depo. at 34; exhibit A to defendant Longmire's submissions.  Sergeant Temple told Longmire that plaintiff had no history of heart problems.  Longmire depo. at 53.

Longmire told the deputies to give plaintiff Tylenol to calm him down.  Longmire depo. at 54-55.  The jail called Longmire two more times with blood pressure readings.  *Id*., at 54-59.  She told deputies to take the plaintiff to the emergency room, but then agreed they could wait until after breakfast and shift change so there would be more personnel available.  *Id*., at 59-60, 83.  *See also* affidavit of Temple, at ¶11; exhibit A to defendant Longmire's submissions (note from Temple).  She did not go to the jail because she knew the jail staff would send the plaintiff to the hospital if she told them to take him and "never dreamed that they would not."  *Id*., at 70.

The plaintiff was told by jail staff that they were in constant contact with the nurse and that the jail staff "would not release him unless the nurse told them to take me to the hospital.  And she never did tell them to do that.  That's what I was told."  Plaintiff depo. at 147-148.  Longmire had never seen or spoken with the  plaintiff

before her deposition.  *See* plaintiff depo. at 133, 146; Longmire depo. at 60-62.

Several hours after Longmire told the jailers to take plaintiff to the hospital, Naphcare nurse Nolita Wilson began her shift, examined the plaintiff, and thought he seemed alright  According to the plaintiff, he related to her that he had "terrific chest pains, sweating, chills and fever and at that time vomiting, because I had vomited up my breakfast."  Plaintiff depo. at 153.  Wilson told him to return to sick call if he started feeling worse.  She noted in the record that the plaintiff stated he thought it could be indigestion or acid reflux.  Plaintiff absolutely denies making this statement.  Plaintiff affidavit, ¶ 10.  Plaintiff states he did not bother asking to see the nurse again at the jail because "it was pitiful."  Plaintiff depo. at 109, 135.  Longmire never spoke to Wilson about the plaintiff and did not know he was not taken to the hospital.  Longmire depo. at 61-62.  Plaintiff disputes that he ever told Wilson that his pain had "eased up."  Plaintiff affidavit, ¶ 10.

## Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  As the Supreme Court has explained the

4

summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.,* 477 U.S. at 322-23.  The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of  genuine issues of material fact.  *Id.* at 323.  The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro. 56(e).  In meeting this burden the nonmoving party must demonstrate that there is a "genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); Fed.R.Civ.P. 56(c).

"A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AL Transport*, 229 F.3d 1012, 1023 (11th Cir.2000), quoting

*Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).  A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir.1991).

## Legal Analysis

### Defendant Sheriff Blakely

Sheriff Blakely alleges he was not deliberately indifferent as required for plaintiff to get past qualified immunity, because jail policy was to provide medical care.  He made no decisions in the individual medical treatment provided to plaintiff. Plaintiff argues that the sheriff is liable because his policy was to have no medical personnel at the jail from 4:30 p.m. to 7:30 a.m. and his deputies were not provided with emergency medical training by Naphcare.  *See e.g.*, plaintiff's brief at 5-6; Longmire depo. at 18-19.  The jail relied on the provision of adequate medical services from Naphcare. The plaintiff has alleged no basis on which a reasonable jury could find that Blakely knew or should have known Naphcare was not providing adequate medical care.

A sheriff cannot be held liable on a theory of respondeat superior, rather the plaintiff must establish that the Sheriff himself was deliberately indifferent. *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla*., 402 F.3d 1092, 1115 (11th

Cir.2005); *Hardin v. Hayes,* 957 F.2d 845, 849 (11th Cir.1992).  For § 1983 liability, the plaintiff must show a causal connection between actions of the supervising official and the alleged constitutional deprivation. *Brown v. Crawford,* 906 F.2d 667, 671 (11th Cir.1990).  This means a sheriff may only be held liable when his or her "official policy" causes a constitutional violation.  *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Sheriff Blakely asserts he is entitled to qualified immunity.  To avoid summary judgment based on qualified immunity, the plaintiff must show deliberate indifference by the Sheriff to the plaintiff's need for medical care.  If there is no deliberate indifference, there can be no violation of a constitutional right and hence no § 1983 liability.  *See e.g., Marsh v. Butler County*, 268 F.3d 1014, 1022 (11th Cir.2001). Plaintiff has not argued that Blakely knew or should have known Longmire or Naphcare was negligent.  Rather, plaintiff argues that Blakely should have known something like the facts of this case could happen because there were no medical personnel at the jail from 4:30 p.m. to 7:00 a.m.  However, the plaintiff has provided no evidence that Blakely personally knew or should have known that the nurse on call would not provide adequate care, should the nurse be so summoned.  Plaintiff admits he never saw or spoke with Blakely when he was in jail.  Plaintiff depo. at 101; Blakley depo. at 26.

Plaintiff relies on *Adams v. Poag,* 61 F.3d 1537 (11th Cir.1995)*,* for the proposition that a supervisor's failure to adequately train and supervise subordinates can constitute deliberate indifference if a reasonable person in the supervisory position would understand that failure to train and supervise constituted deliberate indifference and if the supervisor's conduct was causally related to the subordinates' violation of the plaintiff's constitutional rights. *Id*., at 1544. The plaintiff has offered no evidence that the Sheriff's reliance on Naphcare for medical care for inmates violated this standard. The jailers were trained to call the on-call nurse for Naphcare should an emergency arise between 4:30 p.m. and 7:00 a.m. The jailers did so. The plaintiff has presented no evidence that the jailers were instructed, as a matter of policy, to ignore the medical advice so obtained.

Qualified immunity insulates government actors, in their individual capacities, from civil lawsuits as long as the challenged discretionary conduct does not violate clearly established federal statutory or constitutional rights. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Lassiter v. Alabama A & M University Bd. of Trustees,* 28 F.3d 1146, 1149 (11th Cir.1994).

> In a medical treatment case, a plaintiff may demonstrate the existence of a clearly established medical standard either through reference to prior court decisions or to the contemporary standards and opinions of the medical profession. *Howell,* 922 F.2d at 719 (citations omitted). Plaintiffs frequently resort to the contemporary standards of the medical profession when the challenged action required the exercise of medical

judgment. *Howell,* 922 F.2d at 719-20. In such an instance, a plaintiff may produce opinions of medical experts asserting that the inmate's treatment was so grossly contrary to accepted medical practices as to amount to deliberate indifference. *Howell,* 922 F.2d at 720. Although this inquiry may sound in medical malpractice, a plaintiff must demonstrate more than mere negligence in order to assert an Eighth Amendment violation. *Estelle,* 429 U.S. at 106, 97 S.Ct. at 292. "[I]t is obduracy and wantonness, not inadvertence or error in good faith," that violates the Eighth Amendment in "supplying medical needs." *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986).

*Adams v. Poag*, 61 F.3d at 1543.  The plaintiff here has produced no opinion of medical experts regarding the plaintiff's treatment or lack thereof.

The plaintiff must also show that Blakely was on notice that his policy of failure to train jail personnel regarding medical care of prisoners was somehow deficient.  *See e.g., Gaines v. Choctaw County Commission*, 242 F.Supp.2d 1153, 1164-1165 (S.D.Ala.2003).  Without such allegation, plaintiff cannot prevail on his supervisory liability claim.[1]  Although the contract between the county and Naphcare required training in emergency procedures, the plaintiff has not alleged how he was injured based on that alleged breach of that contract.  In other words, the plaintiff has placed no evidence before this court that training the jail staff in emergency

---

[1]The only allegation specifically applicable to a failure to train claim is the plaintiff asserts that, when attempting to take his blood pressure with a manual cuff, "the boy told me, he said, "I've never used one of those before."  Plaintiff depo. at 44.  However, other evidence demonstrates that the plaintiff's blood pressure was taken each time by Dyanne Temple, who is female.  Affidavit of Dyanne Temple, at ¶¶ 6, 9, 11

procedures would have changed the outcome.  Additionally, because the contract between Naphcare and the County provided for 24 hour care at the jail, the sheriff's failure to ensure that Naphcare actually provided training in emergency procedures in accordance with the contract does not rise to the level of deliberate indifference to plaintiff's medical needs as a matter of law.[2]

"Mere negligence in diagnosing or treating a medical condition is an insufficient basis for grounding liability on a claim of medical mistreatment under the Eighth Amendment." *Adams v. Poag,* 61 F.3d at 1543*,* (quoting *Estelle v. Gambel,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976)).  Rather, as stated above, the plaintiff must establish deliberate indifference on the part of the government official.  The analysis of a claim of deliberate indifference to a prisoner's serious medical needs has two components: whether evidence of a serious medical need exists; if so, whether the defendants' response to that need amounted to deliberate indifference.  *See Mandel v. Doe,* 888 F.2d 783, 788 (11th Cir.1989).  See also *Carswell v. Bay County*, 854 F.2d 454, 457 (11th Cir.1988); *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 704 (11th Cir.1985) (stating the standard as requiring

---

[2]Defendants allege one of the deputies at the jail at the relevant time, (also named Williams), is a paramedic with the fire department and has emergency medical training.  Blakely depo. at 21.  While this deputy assisted in removing the plaintiff from his cell and taking him downstairs, a different jail employee, Dyanne Temple, took plaintiff's blood pressure and monitored him.  Temple affidavit, ¶¶ 6, 8, 9, 11.  Therefore, Williams' training has no effect on the court's analysis of the facts of this case.

knowledge of the need for medical care and an intentional refusal to provide that care constitutes deliberate indifference).   Medical treatment that is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" constitutes deliberate indifference. *Poag*, 61 F.3d at 1244 (quoting *Rogers v. Evans,* 792 F.2d 1052, 1058 (11th Cir.1986).

Assuming evidence of a serious medical need existed, there is no evidence that Blakely's response was inadequate, as he did not know of the need.  Further assuming that the jailers response was inadequate, the jailers are not parties.  Thus, the only real issue before the court is whether Blakely should have provided emergency medical training to his jailers.  Because he had reason to expect that if medical attention was needed, it would be provided under the Naphcare contract, and the plaintiff has offered no evidence to the contrary, Blakely could not have been on notice that his policy of failure to train jail personnel regarding medical care of prisoners  was somehow deficient.   The jailers specifically ignored the medical instructions Longmire gave, namely to send the plaintiff to the hospital.  Rather, they waited another two or three hours, then sent the plaintiff to Nurse Wilson, who did nothing.  Plaintiff argues that summary judgment should be denied "due to the deliberate indifference on the part of the prison officials involved."  Plaintiff did not sue any of the jailers actually involved.

11

**Defendant Limestone County**

Defendant County alleges it is not responsible for the daily medical care of jail inmates, and even if it was, it contracted with defendant Naphcare for medical services.  Plaintiff argues that the County assumed the responsibility for medical care at the jail when it entered into the contract with Naphcare..  Defendants County and Blakely state policy required jail staff to contact the on-call nurse, who was supposed to contact an ambulance if needed.  Longmire told the deputies to take plaintiff to the hospital, but she did not arrange for transport.  Longmire depo. at 38, 82.  She did state that if there "was an actual emergency, I could go ahead and send them out, but then I would notify a doctor that they went out or was going out. Because of the doctors not being available in the building, if there was an emergency and I needed to send them out then, yes, I could, and what I would do is ask jail personnel to transport that individual to the hospital."  Longmire depo. at 36

The County is not liable under either § 14-6-19 *Alabama Code, 1975,* which requires the county to "fund medical care for inmates" or § 1983 for the same failure to fund, because it did provide adequate funding to the jail for medical services.  Its policy was to fund care at whatever level the jail required.  Blakely depo. at 10-11.  Plaintiff's lack of care was not foreseeable to the County. The County budgets and pays for Naphcare, and plaintiff fails to allege some means by which the County

12

should have been aware that Naphcare or Longmire were not competent.  Blakely did testify that the day-to-day expenditures for inmates medical care is approved by the Commission, not him.  Blakely depo. at 9-10.  However, plaintiff has presented no evidence that the Commission did not pay whatever amounts were requested for such care.

The County does not control the deputies at the jail.  Additionally, the plaintiff has set forth no theory under which he may recover for Naphcare's failure to train the jailers in emergency procedures as specified in the contract with the county.  Therefore, this claim is due to be dismissed and summary judgment granted in favor of the County.

**Defendants Longmire and Naphcare**

Defendant Longmire alleges she was not negligent because when deputies called her three times from the jail, she answered her phone each time.  Under the contract between the county and Naphcare, Naphcare was supposed to provide the jail staff with training in emergency procedures.  Plaintiff argues Longmire was negligent because she never asked for more information than the plaintiff's name and blood pressure.  *See* Longmire depo. at 48.  However, her final instruction was to take the plaintiff to the hospital.  The plaintiff has offered no evidence that further information would have changed Longmire's advice to the deputies.  Nor has the plaintiff offered

13

any evidence that the reasonable standard of care required Longmire to obtain more information than the plaintiff's blood pressure.

While plaintiff's blood pressure was taken, plaintiff asserts it was done improperly and thus gave a faulty reading.  However, the plaintiff has offered no evidence to support this claim.  Plaintiff asserts he told jail personnel that he needed to go to the hospital and that he had insurance.  He alleges that a female officer said "Mr. Williams, you're not getting out of here ..."  *See* plaintiff depo. at 49-50, 133-134.

A doctor was not available at the jail 24 hours a day, 7 days a week for consultation, except by phone.  Longmire depo. at 33-35.  In case of an emergency Longmire was to send patients to the emergency room.  *Id.*, at 34, 36.  Longmire told the jail staff to take plaintiff to the hospital, but took no action to ensure it was done. With this knowledge, the jailers sent plaintiff to Wilson, who did not seem concerned. No one has set forth any evidence as to what Wilson was told, or whether Wilson knew Longmire told the deputies to take the plaintiff to the hospital.

Obviously, the jail personnel suspected something was wrong with plaintiff, or they would not have called Longmire three times in the middle of the night. Longmire recognized this.  Longmire depo. at 81-82.  Plaintiff told jail staff he was having "chills, fever, shortness of breath, chest pain like a brick in your heart trying

to flow through the veins.  And I didn't feel like arguing with them.  She done told me I couldn't get out."  Plaintiff depo. at 50.  Longmire makes much of the fact that she never met or examined the plaintiff.  However, this was her job.  She was the on call nurse.  She based her decisions for his care solely on the report of what his blood pressure was.  She asked no other questions about him.  Longmire depo.  at 50.  The end result was that she instructed plaintiff be taken to the hospital, and he was not.

Even if the plaintiff had sued Wilson and the court found that there was a genuine issue of material fact as to negligence of Wilson, the  plaintiff has offered no expert testimony to establish that Longmire, Wilson or Naphcare did not act within the reasonable standard of care.

## Conclusion

The court having considered the foregoing, and being of the opinion that summary judgment is due to be granted in favor of the defendants and against the plaintiff on all counts of the complaint, the court shall so rule by separate Order.

**DONE** this the 3rd day of January, 2006.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

15